Mr. Wickliffe
moved, the court for a re-hearing, on the following petition,
The counsel for Parker’s heirs, respectfully asks of the court, a re-hearing of their case with T. Bodley and others, and trusts, that ■a more intimate acquaintance with the facts developed in the two volumes of records, will' show, that they conduce to a contrary result.
Your petitioner is the more confident in the hope, from the fact, that he perceives that several of the matters of record, on which he most confidently relied, are overlooked by the court, and in some respects, as he humbly conceives, misunderstood.
The court seem to treat the setting aside of Bodley’s dismission as a nullity, and to consider that it was done on the motion of Parker’s heirs, when the order shows on its face, that Bodley had theretofore made his motion to rescind the order, and the court *454 Lad failed to decide on bis motion. Bodley, and not Parker, moved to set aside the dismission, and the record shews that Parker did not object to it. Parker not objecting, and the court and Bodley acting, surely place.s Bodley’s cause, as to all the world, for trial. The court made the order and Parker assents, so that consent cures error; ancl the court consolidated and made the two suits one, and that the bill of Parker shall stand as a cross bill. To this, Bodley neither objects in the the inferior, or this court; and if there were error or irregularities, it is surely not, in the attitude in which the cause comes before this court, the subject oí animadversion to the prejudice of Parker,
Petition for a re-hearing.
If tire court erred in re-instating Bodley’s suit, it was on his motion, and none but Parker could complain. The petitioner therefore, thinks, that so much of the opinion as decides Bodley not before the court, is incorrect, and should be revised.
The court then state, that George Anderson was a purchaser under a decree of a court of competent jurisdiction, and relying on that decree, should be protected. As a general principle, this may be correct, but your petitioner can but say, that it is most alarming to society, that such shall he the rule in relation to infants, and he still hopes that a more deliberate opinion will reverse the rule and extend to infants that protection, which he thinks the wisdom of ages has sanctioned. It is true, that the court say, no case can be shown where an infant has stood in a more favorable or better situation than adults. The counsel can only reply to this remark, that all the hooks allow the infant time, after he comes of age, to set aside the decree, and he entered the cause most confident that this single rule, so well known, and so often required by this court, was sufficient. He is taken by surprise, by this remark of the court, and is here without books; but on the other hand, he will ask the court, if there is a case in chancery, where an infant’s estate has been sold on a reversed decree, that a chancellor has dismissed him without his property or its price, before this case. But he hopes that abundant *455 cause will be found in the record itself, not to treat Mr. Anderson as a purchaser, under a decree, relying on the faith of the decree, as the court supposes. But that he is a purchaser at private sale ■and bargain with Bodley, not only contemning but appealing from the opinion and decree of the judge.
Petition for a re-hoaring.
In sheet 22d, your honors will find the decree directing the sale at six months credit. This decree is entered in June term 1809; and in July, a continuation of the same term, the commissioners report that they had sold the house to George Anderson, but he had refused to give bond and security agreeably to the decree. The court take no notice of the sale, except to decree that Anderson should pay, on or before the 18th of October, and that the trustees should make a deed.
Anderson prayed an appeal.
In the month of October following, Bodley and Anderson entered into an agreement, (see it in page 109,) by which Bodley released to Anderson all the interest he had in Joseph Byers’ estate, except Gallagcr’s bond for one hundred and twenty-five acres of land in the State of Ohio. Anderson covenants to convey to Bodley a house and lot on Mulberry street, between the lots of Robert Barr and William Houston &c.; and to assign a bond for'out lot, 85, 4sc. and to release Bodley from all accounts on the books of Joseph Byers, and to indemnify him against debts &c. and Bodley covenants that so soon as Anderson shall pay, or secure to be paid, to the executors of Robert Parker, $1582 66, he would procure to be executed from said executors, a release to said Anderson, and also a release from the Presbyterian Congregation.
Now here is no execution of the sale; no declaration to that effect. But the parties, refering to the decree, make a bargain. Anderson does not regard, •the sale; he does not rely on it, or the decree, for a title; but solely upon the responsibility of Bodley. He not only takes -Bodley’s release, but he gives Bodley one; he not only takes Bodley’s covenant, that the *456 congregation shall malee cl deed, hut that Parker shall make a release. Why, if he looked to th,e decree; why if he were a purchaser, not coerce the release from the Presbyterian Congregation? Why, if Bodley thought him bound, give his bond for a deed from both Parker and the trustees? The fact was, that Anderson would not comply with the decree; lie knew he could reverse it; Bodley knew so, and Anderson would not trust the decree; and Bodley, to stop his appeal, takes goods in payment, and guaranties the title. This is most obvious; and can it be possible now, that Anderson, who refused compliance with the decree, who knew the decree was not worth a farthing, but who bought of Bodley, relied upon Bodley, took Bodley’s obligation that both Parker &c, should convey, when he paid, shall now have the shelter extended to a fair purchaser, who had, under the faith of a decree, laid out his money? It is most sanguinely hoped that your honors will think otherwise.
Petition for a re-hearing.
That these men understood each other, and that the reliance, upon its face, is an after thought, is further illustrated by attending to dates. The deed of the trustees bears date the 6th of October, 1809. But, strange to say, this important instrument is not witnessed, and is never acknowledged until February, 1813. How happens this? May we not deny the existence of this deed until February, 1813? If the date is a true one, where was it for nearly four years?
But an attention to the time of filing the record in the first case, will explain a great deal. The copying of the record took some time; and the record is filed at the April term, 1813. The presumption is strong, that both Bodley and Anderson had ascertained that Parker’s heirs intended to prosecute a writ of error; and hence the deed, recorded in February, but dated so as to reach back to October, 1809. As Bodley and Anderson took no testimony to prove that the deed bore the true date, this presumption is inevitable.
I think I have now shown, that Anderson is a purchaser from Bodley, Indeed, I ¿bought that *457 that fact could not have escaped the attention of the court. For in the inferior court, the reliance was mainly on the fact, that Bodley was an executor, and had a right to sell. Indeed Bodley sets up this power himself.
Petition for a «/-hearing,
If, then, I have shewn from this record, that Anderson acquired the deed from and through his contract with Bodley; that he continued to hold, until the hour of death, Bodley’s covenants, not Only for the title of the trustees, but Parker’s also;' 'that his heirs and executors have retained it, and now hold jt on Bodley, I trust I have removed every difficulty growing out of the supposed sale under ¡the decree of a court.
It now remains to show, that under no rule whatever, can Anderson be protected. ,
First: suppose him to he protected as a purchaser under the decree, he certainly must stand in all relations of a purchaser without notice. He had not, when this writ of error was sued out, paid the purs chase money, and in this view he is not protected. But contracting with Bodley, surely there is no pretence for the plea of a purchase without notice. By his contract, he only got Bodley’s interest. He was to get two other deeds — the one from the trustees, the other from Parker. He was to pay Parker. He has personal security that he shall have these titles. This covenant is not cancelled; it is not performed when Parker sued out his writ of .error, and apart of the money is unpaid. Without other notice, can he protect himself/1 Surely not. But he had notice of Parker’s title. He knew they contested the claim of Bodley, and he guarded against loss, by taking Bodley, not the court, as warrantor against their title.
Thus it seems to your petitioner, that upon no principle applicable to a purchaser of record, or upon individual contract, can he be protected.
Your petitioner can but implore your honors to review this case; not only because of the great injuries his clients sustain, but the certain evils tb#t must result from principles settled by it. v
Petition for a re-boaring„
By the decision, if a fraudulent plaintiff procure a decree, and order of sale, and a sale is effected, and the money paid over, the infant is ruined, without redress. Perhaps the world could not furnish a stronger instance of the danger to all infant’s estates than the present. The purchaser here was the tenant of Parker long before his death; he continued to be such. Bodley was executor, and as such, had possession (as must be presumed,) of every paper belonging to the estate. The children of Parker are all infants, helpless and unadvised, until the executor and tenant strip them of their patrimony, for a mere pittance; and even that pittance withheld. It is vain to speak of the answer by guardian; the accounts are settled; the accounts are furnished by Bodley. Every thing, save the answer, is between Bodley and Anderson, until the daughter marries; when the decree is reversed, and Bodley’s claim to the property, with all his means to manifest a fair or a fraudulent one, rejected.
The court are especially invited to attend to what decree is reversed. It is not the final decree between Bodley and Parker alone, but the decree between Parker, Bodley and Anderson.
The first decree was, that commissioners, Morrison &c. should sell. The commissioners report, that they have made no sale; that although Anderson bid, he failed to give bond. Then, without a Cross bill, without a motion, the court decree, that Anderson shall pay the complainants $1,582 56— this without aboncl to pay, andBodley another sum. This decree is reversed in toto; what decree then has Parker? What has Anderson? Nor ought it to escape observation, that this whole business about selling the property, is got up between Bodley and Anderson. There is no bill against Parker’s heirs suggesting the necessity of a sale; simply a prayer for a conveyance of an undivided or divided moiety. An ex parte, an extraordinary order, is made to sell the lot. No sale is made under the order; and on the final decree, the trustees are decreed to convey the lot to Anderson, who is no complainant nor petitioner, but a contemner of such- erroneous *459 jproceéciing, until Bodley consents to make a barter of property with him, and he finds that, as to the pittance to- go to the benefit of Parker’s estate, Bodley can control that too;- that he can and will arrange it in- doubletts, of a- little cash, a little improvements and a little- tape, and a few nut 'megs. Against this most erroneous and unjust proceeding, these infants have appealed to the appellate-court of their country; the court reverse the decrecí against them; but tell them this is all you can.get; after expending nearly the whole of the pittance you have received for patrimony, to expose the transaction successfully, we dismiss you out of court, and, com: pel you to pay costs.
Petition for a re-hearing.
Surely the court will review this part of the opinion, The lot, in equity, is Parker’s or its price- is. The bill prayed for the appropriate relief. Anderson and Bodley were both before the court below.. Anderson’s heirs in their answer, pray that Bodley may be decreed to pay, if Bodley received the price, which he did; if not in money, what he apd Anderson would pretend is equivalent to it. He owes precisely that much to some body. You say he is not entitled to the lot, You direct. Parker, to account with him, but h,e declines the account and dismisses bis bill. Parker’s, heirs file their cr.oss bill, He still exhibits no other account than that settled in the former decree. Are not Parker’s heirs entitled to the amount for which their- lot sold, either by Morrison &c. or by Bodley? if the court confirm the sale, then $5,000; if you say that Bodley as executor,. might' sell, Parker’s property, then to its reasonable value, at the time of the sale., against Bodley as executor, or against Anderson, or against, some one, or some how?
It never can h& t-hat such is the law and equity, of this land, that infant’s estate can be thus wrested from them, and they left remediless. This is a leading case, a case of the first impression, and the counsel thinks demands a revision. *
The opinion, though able, and evincive, of the. great desire of the judges to do right, yet it does not, in the opinion of the counsel, take the best- view *460 0f the record; nor does it sufficiently dispose of the cause. The errors assigned, and the bill, call for either a land or a money redress against Bodley and Parker’s executors, or against Andei’son. The court not answered tin; complainants in their claim for an indemnity in money, if they do not get their estate back.
July 1, 1828.
Petition fora 9'
Statement of o^which'the re-hearing ivas granted,
If a new trial is granted, these points, as well as the main question, can be better matured; and if the unfortunate Parkers are to lose the property without any equivalent or redress whatever, the court will have manifested its patient desire to do them justice, and afford to them satisfactory reasons why, if the land is not theirs, they cannot get its value; whether it is upon the sale made by Bodley, as executor, or on the sale made by the commissioners, that the sale is affirmed.